## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BEATRICE ELDRUP-SMITH,** | : | **CIVIL ACTION NO. 1:12-CV-1862** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SEARS ROEBUCK AND CO.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter is a motion (Doc. 17) pursuant to Federal Rule of Civil Procedure 56 filed by Sears Roebuck and Co. ("Sears").  Sears seeks summary judgment as to all claims asserted by plaintiff Beatrice Eldrup-Smith ("Eldrup-Smith"), a former employee of Sears who alleges that her former employer discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. §§ 951-963, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, and corresponding Pennsylvania state minimum wage laws.  Sears has also moved to strike Eldrup-Smith's verification (Doc. 30-1) pursuant to Federal Rule of Civil Procedure 56(c)(4).  (Doc. 31).  For the reasons that follow, the court will grant both motions.  (Docs. 17, 31).

## I.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> Fed. R. Civ. P. 56(c).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed. <u>Pappas</u>, 331 F. Supp. 2d at 315.

## II.   <u>Statement of Material Facts</u>[1]

Eldrup-Smith began her employment at a Sears retail store located in York, Pennsylvania, in January of 2005.  (Doc. 18 ¶¶ 1, 5).  Sears initially hired Eldrup-Smith as an office manager, but she was promoted to human resources ("HR") lead in early 2006.  (<u>Id.</u> ¶ 1-2).  Eldrup-Smith had no HR experience prior to joining the Sears' team in 2005, but she received on-the-job training for her HR position.  (<u>Id.</u> ¶ 3).  Sears has a written anti-discrimination policy which prohibits harassment and

---

[1] To the extent facts are undisputed or unequivocally supported by record evidence, the court cites directly to Sears' statement of material facts.  (Doc. 18).

discrimination in the workplace.  (Id. ¶ 8; see also Doc. 18, Ex. 5 (Sears' workplace harassment and discrimination policy)).

Eldrup-Smith's position as HR lead required her to "maintain working knowledge of applicable federal, state, and local employment laws and ensure awareness and compliance throughout the store." (Doc. 18 ¶ 11).  Eldrup-Smith's responsibilities included "providing proactive support for associates, scheduling, coaching, training, supervising and selecting Office Associates to perform [tasks]" and supporting "the management team in their execution of [HR] accountabilities and perform store [HR] administrative functions."  (Id. ¶ 12).  Eldrup-Smith also performed payroll processing for certain employees and followed up with assistant store managers "to ensure the accuracy of the hours and earnings entered for the associates who report to them."  (Id. ¶ 13).

In December of 2006, in her role as HR lead, Eldrup-Smith called a Sears HR hotline, referred to internally as 88 Sears, for advice regarding a complaint she had received from an associate about a manager's behavior.  (Id. ¶ 59).  The consultant from 88 Sears advised Eldrup-Smith to speak with the store manager and have the store manager conduct an investigation.  (Id. ¶ 60).  The consultant also advised Eldrup-Smith to tell the store manager to interview the manager involved and report back to 88 Sears thereafter.  (Id. ¶¶ 61-62).  Eldrup-Smith participated in the store manager's interview of the allegedly offending manager.  (Id. ¶ 63).

Eldrup-Smith suffers from post-traumatic stress disorder ("PTSD").  (Id. ¶ 17).  She was diagnosed in January of 2003 following a traumatic personal event

3

and has been under the care of medical professionals and counselors since that time. (Id. ¶ 18). Eldrup-Smith did not inform Sears' that her PTSD diagnosis required workplace accommodations nor did she request such accommodations. (Id. ¶ 19). Eldrup-Smith was never denied the right to take time off. (Id. ¶ 20). She contends that although Sears never denied her requests for time off, her manager would verbally reprimand her upon her return. (Doc. 22 ¶ 20).

All hourly employees are required to record hours worked on a time and attendance recording device. (Doc. 18 ¶ 21). In her role as HR lead, Eldrup-Smith "trained other associates on Sears' timekeeping policies including the policy that non-exempt associates, like [herself], are responsible for accurately recording their time." (Id. ¶ 22). The policy mandates that the time an associate "punches" must accurately reflect the hours actually worked and the length of meal periods. (Id.) All employees, including Eldrup-Smith, are trained with respect to associates' time and attendance responsibilities. (Id. ¶¶ 21-26). The time and attendance policy also prohibits managers from requiring non-exempt employees, like Eldrup-Smith, to work off the clock. (Id. ¶ 28). The policy similarly prohibits managers from ignoring such conduct when it occurs. (Id.) Any infractions are subject to disciplinary action and must be reported to 88 Sears. (Id. ¶ 29; also Doc. 18 Ex. A, Eldrup-Smith Dep. 46:5-23, May 1, 2013). Eldrup-Smith understood these policies and acknowledged that she received training on them. (Doc. 18 ¶ 32; Eldrup-Smith Dep. 46:5-23)).

Chris Dare ("Dare") was the store manager at the time of Eldrup-Smith's termination. (Doc. 18 ¶ 35). On July 9, 2009, Eldrup-Smith was scheduled to work

4

from 1:15 p.m. to 9:00 p.m.  (Id. ¶ 36).  Eldrup-Smith became locked out of her office

in the early afternoon of July 9 and sent a text message to Dare requesting to leave

early.  (Id. ¶ 37).  Eldrup-Smith testified that Dare "apologized and said we'll get you

a key as quick as possible," but she did not receive a key.  (Id. ¶ 38).  Eldrup-Smith

does not recall punching out when she left work on July 9, 2009.[2]  (Id. ¶ 39).  She

testified that she left work between 3:00 and 4:00 p.m. on that day.  (Id. ¶ 40).  When

she returned for a scheduled shift on July 11, 2009, Eldrup-Smith entered a manual

clock-out time for July 9, 2009, of 9:15 p.m.  (Id.)

On July 13, 2009, Dare approached Eldrup-Smith about the falsified time

entry.[3]  (Id. ¶ 43).  Eldrup-Smith drafted a statement to "Michelle," an 88 Sears HR

representative, explaining her actions as follows:

> I was angry at having my time wasted yet again and
> frustrated over coming 40 min[utes] to work and not being
> able to perform my job. When I cooled off I realized I
> should put correct time even though my time was wasted
> so I adjusted it. It was out of sheer frustration. I should not
> have been quick to lose it.

(Id. ¶¶ 43-46; Eldrup-Smith Dep. Ex. 20).  The note is dated July 13, 2009.  (Doc. 18

¶ 43; Eldrup-Smith Dep. Ex. 20).  Dare consulted the 88 Sears HR hotline for advice.

---

[2] Eldrup-Smith testified that her memory of that day is impaired as a result of a panic attack purportedly caused by her interaction with Dare.  (Eldrup-Smith Dep. 100:4-15).

[3] Eldrup-Smith emphasizes that she corrected the mistaken time entry prior to being approached by Dare.  (Eldrup-Smith Dep. 104:4-20).  The court will address this fact *supra* to the extent it is material to the parties' substantive arguments.

5

(Doc. 18 ¶ 48).  Thereafter, on or about July 13, 2009, Dare terminated Eldrup-Smith for time theft.  (Id. ¶ 49).  She was 55 years old at the time of her termination.  (Id. ¶ 51).  Sears has previously terminated two other associates in the same store, ages 42 and 22, for time theft violations.  (Id. ¶ 52).  Eldrup-Smith does not contradict any of these facts with record evidence; rather, she challenges Sears' "characterization" of the facts and urges the court to draw different inferences therefrom.

Eldrup-Smith commenced this action by filing a seven count complaint (Doc. 1) on September 18, 2012, asserting various claims for discrimination, harassment, and retaliation against her former employer.  Sears answered (Doc. 4) the complaint on November 19, 2012, denying all of Eldrup-Smith's allegations.  After a period of discovery, Sears moved for summary judgment (Doc. 17) as to all of Eldrup-Smith's claims asserting, in part, that Eldrup-Smith's claims fail for a total lack of evidence.  Sears' motion was accompanied by a supporting brief (Doc. 19) and statement of undisputed material facts (Doc. 18) with citation to record evidence.  Eldrup-Smith filed opposition papers (Doc. 23) and a responsive statement of facts (Doc. 22) with citation only to her complaint (Doc. 1) and unsworn notes.  Sears filed a reply brief (Doc. 25) highlighting these evidentiary deficiencies, and Eldrup-Smith responded with a sur-reply brief (Doc. 30) accompanied by her sworn verification (Doc. 30-1) of the averments made in her complaint.  On November 4, 2013, Sears responded with a motion (Doc. 31) to strike Eldrup-Smith's verification for noncompliance with Federal Rule of Evidence 56(c)(4).  Both motions are fully briefed and ripe for disposition.

### III.   Discussion

#### A.   Sears' Motion to Strike

The court first addresses the threshold question of whether Eldrup-Smith's

verification (Doc. 30-1) complies with the Federal Rules of Evidence.  Rule 56(c)(4)

governs affidavits in opposition to summary judgment and provides: "An affidavit

or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the

affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P.

56(c)(4).  The Third Circuit has interpreted this rule as requiring the affiant to state

facts, rather than opinions, conclusions, or beliefs.  See Maldonado v. Ramirez, 757

F.2d 48, 51 (3d Cir. 1985); see also Summy-Long v. Pa. State Univ., 2009 U.S. Dist.

LEXIS 24851, *2 (M.D. Pa. Mar. 26, 2009) ("Statements of belief, no matter how

sincere, are properly subject to a motion to strike because they do not meet the

personal knowledge requirement.") (citing Fowler v. Tillman, 97 F. Supp. 2d 602,

607 (D.N.J. 2000)).  Courts should strike declarations when the "statements are

clearly personal opinions, not facts within the personal knowledge of" the affiant.

E.g. Bell v. Lackawanna Co., 892 F. Supp. 2d 647, 662 (M.D. Pa. 2012) (dismissing

declaration when plaintiff declared that supervisors terminated her for political

affiliation because that statement represents plaintiff's opinion, not facts within

her knowledge).

Eldrup-Smith's verification (Doc. 30-1) falls well short of satisfying these

standards.  Eldrup-Smith declares that she reviewed: the notes attached to her

7

deposition transcript (Doc. 22-5); the complaint (Doc. 1) and responsive statement

of undisputed material facts (Doc. 22); a document she authored in connection

with her charge of discrimination against Sears[4]; and that she reviewed her own

damages calculation and notes drafted in preparation for her deposition.[5]  Based

upon her review, Eldrup-Smith vaguely declares:

> I declare that I believe to be true the allegations of which I
> have personal knowledge.  As to the allegations that I do not
> believe I have personal knowledge of, I do believe them to
> be true based on information, belief, specified information,
> documents either or all.  In all cases the allegations are
> made to the best of my information, knowledge, and belief.

(Doc. 30-1 ¶¶ 1-4).

Eldrup-Smith's verification fails to satisfy Rule 56(c)(4) for several reasons.

First, the verification does not state *which* facts Eldrup-Smith purports to verify.

(Id.)  Instead, Eldrup-Smith declares that *some* of her allegations are known to her

personally and that she *believes* the balance of the allegations to be true, whether or

not within her personal knowledge.  (Id.)  The verification thus fails for its dearth of

factual specificity.  See FED. R. CIV. P. 56(c)(4).  Second, the verification is clearly

---

[4] Eldrup-Smith asserts that these "communications" were reviewed and
sworn to at the time of her deposition and urges the court to accept the truth of the
matters stated therein.  (Doc. 30-1 ¶ 3).  The vaguely-described "communications,"
however, have not been filed with the court or otherwise presented for
consideration.

[5] Like the discrimination charge documents, Eldrup-Smith's verification does
not direct the court to record or other copies of these documents.  The only record
evidence which arguably fits this description is Eldrup-Smith's demand to Sears for
damages, drafted by her counsel prior to litigation.  (Doc. 22-6).

premised not on facts within Eldrup-Smith's knowledge but instead on her belief in the truth of certain factual allegations.  (Id. ("I *believe* to be true the allegations of which I have personal knowledge.  As to the allegations that I do not believe I have personal knowledge of, I do *believe* them to be true . . . .") (emphasis added)).  The verification thus runs afoul of the Third Circuit's mandate that Rule 56(c)(4) affiants must "set forth facts, rather than opinions or conclusions."  <u>Maldonado</u>, 757 F.2d at 50-51.  For these reasons, the court is constrained to grant Sears' motion (Doc. 31) and strike Eldrup-Smith's conclusory verification (Doc. 30-1) from the record.

### B.    Merits of Eldrup-Smith's Claims

Eldrup-Smith asserts claims for age discrimination (Counts I-II), disability discrimination (Counts III-IV), and violation of various federal and state labor laws (Count VII).[6]  (Doc. 1).  Sears has moved for summary judgment as to all claims against it.  (Doc. 17).  The court addresses each of Eldrup-Smith's claims *seriatim*.

### 1.    *Age Discrimination*

Federal courts analyze claims of age discrimination under the <u>McDonnell Douglas</u>[7] employment discrimination burden-shifting framework.  <u>Smith v. City of</u>

---

[6] Eldrup-Smith's complaint (Doc. 1) also asserted claims for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a corresponding claim for retaliation under the PHRA.  Eldrup-Smith withdrew these claims in her answer in opposition to summary judgment.  (Doc. 21 ¶ 3).

[7] <u>McDonnell Douglas</u> is the Supreme Court's landmark employment discrimination case which first announced the burden-shifting paradigm to be applied in all employment discrimination litigation.  <u>McDonnell Douglas Corp. V. Green</u>, 411 U.S. 792 (1973).

Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009) (applying McDonnell Douglas burden-

shifting framework to ADEA claim) (citing Keller v. Orix Credit Alliance, 130 F.3d

1101, 1108 (3d Cir. 1997)); also Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005)

(same).  The Third Circuit has succinctly articulated the McDonnell Douglas

procedure as follows:

> An employee must first establish a *prima facie* case of
> discrimination, after which the burden shifts to the
> employer to articulate a legitimate, nondiscriminatory
> reason for its adverse employment decision . . . . If the
> employer articulates one or more such reasons, the
> aggrieved employee must then proffer evidence that is
> sufficient to allow a reasonable finder of fact to find by a
> preponderance of the evidence that the employer's
> proffered reasons are false or pretextual.

Fasold, 409 F.3d at 184-85.  The court first considers whether Eldrup-Smith has

established a *prima facie* case of age discrimination.

Eldrup-Smith must prove four elements in order to prevail at this threshold

stage of the age discrimination inquiry: (1) that she is forty (40) years of age or older;

(2) that she was qualified for the position at issue; (3) that she suffered an adverse

employment decision; and (4) that she was replaced by an employee sufficiently

younger to support an inference of discriminatory animus.  Smith, 589 F.3d at 689-

90 (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)).  In

its opening brief, Sears apparently concedes that Eldrup-Smith satisfies the first

three elements of the *prima facie* test but disputes whether Eldrup-Smith's proof

has satisfied the fourth requirement: that circumstances indicate discriminatory

intent.  (Doc. 19 at 4-5).  Eldrup-Smith responds that the record establishes the fourth element.  (Doc. 23 at 18).

In support of her position, Eldrup-Smith directs the court to interrogatory responses of her replacement, Paula Brannon ("Brannon"), wherein Brannon indicates that she was 24 years old at the time she replaced Eldrup-Smith as HR lead.  (Doc. 22-7 ¶ 10).  The Third Circuit has held that substantial age disparities between a terminated employee and her replacement can satisfy the fourth element of the *prima facie* case.  See, e.g., Sempier v. John & Higgins, 45 F.3d 724, 729-30 (3d Cir. 1995) (ten year age difference sufficient to support *prima facie* case); D'Amico v. Pulte Homes, Inc., 2009 U.S. Dist. LEXIS 26441, *7-9 (E.D. Pa. Mar. 23, 2009) (eight year age disparity sufficient to infer a discriminatory animus); see also Smith, 589 F.3d at 689-90 (requiring only that plaintiff proves she was "ultimately replaced by another employee who was sufficiently younger" to infer discrimination).  Accordingly, the court finds that Eldrup-Smith has satisfied the fourth element of her *prima facie* burden because she was terminated and replaced by an employee more than twenty (20) years her junior.

The court's analysis thus proceeds to the second step of the McDonnell Douglas framework, which queries whether Sears has proffered a legitimate and nondiscriminatory reason for its adverse employment action.  Fasold, 409 F.3d at 184.  This burden is one of production, not persuasion, and requires an employer to submit evidence which, presumed true, permits the conclusion that there was a legitimate and nondiscriminatory reason for its adverse employment decision.  See

11

McGivern v. Meadowink Farms, Inc., 111 Fed. Appx. 661, 666 (3d Cir. 2004) (noting that employer's burden at step two is "relatively light" in ADEA case); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (same, in Title VII context). Sears submits that it has a legitimate indiscriminate reason for Eldrup-Smith's termination: her own admission that she falsified time records for July 9, 2009, to reflect 4.25 more hours than she actually worked. (Doc. 19 at 6 (citing Doc. 18 ¶¶ 43, 46)). The record establishes both that Eldrup-Smith admitted to this violation and that Sears' policy contemplated discipline, including termination, for such violations. (Doc. 18 ¶ 22). Eldrup-Smith does not submit evidence to contradict these facts or offer argument in opposition; rather, she contends that Sears' time theft theory is "sheer pretext" for discrimination, (Doc. 23 at 19), an argument more appropriately entertained at the final stage of the McDonnell Douglas framework. For purposes of step two, the court concludes that Sears has satisfied its "light burden" of producing a legitimate, nondiscriminatory for its decision to terminate Eldrup-Smith. See Fuentes, 32 F.3d at 763.

The court's focus thus turns to the third and final element of the McDonnell Douglas analysis: the plaintiff's burden to prove that Sears' legitimate reasons for her termination are mere pretext for discrimination. The Supreme Court recently altered the plaintiff's burden at the third step in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009). In Gross, the Court announced that in order to sustain a claim for age discrimination under the ADEA, a plaintiff must prove at step three of the analysis that her age was the *but for* cause of the employer's adverse action. Id.

at 176; see also Smith, 589 F.3d at 690 (observing that Gross requires "the plaintiff

to prove but-for causation from the outset of an ADEA case").  Although the Third

Circuit has held that Gross does not "require that age discrimination be the *sole*

cause for an adverse employment decision," it must nonetheless be a determinative

factor in order for a plaintiff to prevail.  Robinson v. City of Phila., 491 F3d. Appx.

295, 299 (3d Cir. 2012) (emphasis added) (citing Miller, 47 F.3d at 588)).  This burden

tasks plaintiffs to produce evidence tending to disprove the employer's proffered

nondiscriminatory reason.  See Fuentes, 32 F.3d at 765.  A plaintiff may accomplish

this, and survive summary judgment, by directing the court to such "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions" in an employer's

explanations "that a reasonable factfinder could rationally find them unworthy of

credence."  Id. (citing Ezold v. Wolf, Block, Schorr, & Solis-Cohen, 983 F.2d 509, 531

(3d Cir. 1993)).

As Sears observes, Eldrup-Smith has offered a number of theories to support

her age discrimination claim.  Citing to the allegations of her complaint and notes

submitted in support of her charge of discrimination, Eldrup-Smith contends that

management at Sears "showered . . . preferential treatment" on all young Sears'

employees, (Doc. 23 at 18), asserting that the record is "full of disputes as to the

material fact of whether or not there was a pattern of hostility" directed at Eldrup-

Smith because of her age.  (Doc. 22 ¶ 37).  She contends that she was locked out of

her office multiple times and needed to ask for a key on "numerous" occasions,

(Doc. 22 ¶ 37); that Dare exhibited a pattern of hostility toward all older managers,

(id. ¶ 38); and that Dare acted "with animosity" toward her. (Id.)  Eldrup-Smith broadly alleges that Sears' decisionmakers exhibited a "profound animosity to her disability and her age" which compelled them to fire her.  (Id. ¶ 3).  She asserts that this animosity is demonstrated by Dare's workplace comments to her, including that she "cannot keep up with the rest of the leads" and that she "did not finish cleaning because [she] got tired."  (Id. ¶ 7).

The fatal flaw in Eldrup-Smith's position is that she offers no evidentiary support whatsoever for her blanket allegations of discriminatory intent and pretext. For example, in support of her allegation that Sears' management "discriminated against [her] because of her age 55 (at termination)," Eldrup-Smith cites only to Dare's deposition testimony, establishing that he was "aware that she . . . had post-traumatic stress disorder."  (Id. ¶ 7 (citing Doc. 22-10, Dare Dep. 32:7-13, May 2, 2013)).  Her allegation that her termination was just "a barrage of harassments to intimidate her" due to her age is appended only by an unhelpful citation to Dare's testimony that he "never" discriminated against Eldrup-Smith or other associates due to age.  (Id. ¶ 38).  And in support of her contention that a jury must decide whether Sears' proffered nondiscriminatory reason is pretextual, Eldrup-Smith again cites Dare's testimony, where he unequivocally states that he "absolutely disagree[s]" with Eldrup-Smith's allegations that his accusation of time theft was the result of his hostility "to her age and her disability."  (Id. (citing Dare Dep. 88:24-89:3)).  Eldrup-Smith does not direct the court to *any* objective evidence of record in support of her blanket allegations of profound ageist animosity.

This lack of evidence is fatal to Eldrup-Smith's claims.  A comprehensive review of Eldrup-Smith's brief (Doc. 23) and responsive statement of facts (Doc. 22) reveals that the factual allegations therein are supported only by citation to the pleadings, specifically her own complaint, and to notes which she drafted for her attorney in preparation for this litigation.  (See Doc. 22 *passim* (citing to complaint (Doc. 1) in support of all discrimination related contentions)).  In essence, Eldrup-Smith endeavors to reinforce her initial allegations with more of the same.  (E.g. id. ¶ 7 (plaintiff citing complaint (Doc. 1 ¶ 34) in support of contention that the "record has plenty of evidence" that will permit jury to find that anti-discrimination policy was not enforced); ¶ 38 (plaintiff citing complaint (Doc. 1 ¶ 19) to support her statement that Sears "did not terminate plaintiff for 'integrity reasons'" and that Sears' stated reason is "pretext as the reason for termination of plaintiff")).  The Third Circuit has long maintained that "to survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Pobodnik v. U.S. Postal Serv., 409 F.3d 589, 594 (3d Cir. 2005); see also Kirleis v. Dickey, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) ("Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.").  Eldrup-Smith has offered no record evidence tending to support her position that her age was the determinative factor in Sears' employment decision.  For this reason, summary judgment for Sears is appropriate.

Further, notwithstanding the lack of foundation for Eldrup-Smith's age discrimination theories, the fact remains that Eldrup-Smith *admitted* to the conduct forming the basis of Sears' decision.  Eldrup-Smith attempts to manufacture factual disputes for purposes of surviving summary judgment.  For example, Eldrup-Smith contends that she left early on July 9, 2011, because she was "sick and frustrated" by the way her supervisors treated her and being locked out of her office.  (E.g. Doc. 22 ¶ 38 (citing complaint)).  She asserts that Dare gave her permission to leave early on July 9, 2011, and that he believed her shift ended at 5:00 p.m. and not 9:00 p.m. (Id.)  However, Eldrup-Smith *concedes* that she recorded more hours than she actually worked when she completed her July 9, 2011, time entry.  (Doc. 18 ¶¶ 43-46; Eldrup-Smith Dep. 103:16-20 (testifying that she manually entered 9:15 p.m. as her clock-out time despite leaving at 3:00 or 4:00 p.m.)).  She stated, in writing, that she "was angry" at having her "time wasted yet again" and that she corrected the time entry when she "cooled off."  (Doc. 18 ¶¶ 43-46; Eldrup-Smith Dep. Ex. 20).  Based upon these undisputed facts, it is clear that Eldrup-Smith's actions were intentional and not the result of mistake or neglect.  Eldrup-Smith was aware that violations of the time and attendance policy were subject to disciplinary action, up to and including termination.  (See Doc. 18 ¶ 29).  And she admits that Sears has terminated other individuals outside of her protected class for similar violations. (Doc. 18 ¶¶ 52-58 (Sears terminated two associates, ages 42 and 22, for time theft violations)).  Under the circumstances, a reasonable jury could not find that Sears'

16

stated reasons for terminating Eldrup-Smith were pretextual.  Sears is entitled to summary judgment on this claim.

### 2. *Disability Discrimination*

Eldrup-Smith also contends that her termination was motivated by Sears' hostility toward her disability, *to wit*, her PTSD diagnosis.  The ADA is designed to protect "qualified individuals" from discrimination on the basis of their disabilities.  See 42 U.S.C. § 12112(a).  Like her age discrimination claims, Eldrup-Smith's ADA claim is analyzed under the McDonnell Douglas burden-shifting framework.  See Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 759 (3d Cir. 2004).  Sears assumes for purposes of summary judgment that Eldrup-Smith can establish a *prima facie* case of discrimination, satisfying the first element of the McDonnell Douglas paradigm.[8]  (Doc. 19 at 10).  Sears contends, however, that Eldrup-Smith cannot disprove or discredit its legitimate nondiscriminatory reason for terminating her employment or that disability discrimination played any role in Sears' decision.  (Id.)  The court is compelled to agree.

Eldrup-Smith asserts that Sears' time-theft rationalization is merely pretext to disguise its management's animosity toward her disability.  (Doc. 23 at 14-15).

---

[8] Although the court accepts this assumption for purposes of the instant motion, the court observes that the record does not clearly support Eldrup-Smith's allegation that she notified Sears of the purported severity of her disability or her need for particular accommodations therefor.  E.g. James v. Sutliff Saturn, Inc., 2012 U.S. Dist. LEXIS 56870, *8-9 (M.D. Pa. Apr. 23, 2012) (granting summary judgment for employer where employee failed to provide evidence suggesting that employers knew and believed his knee problem prevented him from engaging in major life activities).

Citing to her complaint, Eldrup-Smith claims that Dare knew of the source and nature of her PTSD, that Dare "purposely took away" the accommodations that she required despite knowing that the accommodations were necessary, and that his "sole explanation" for this action is "an absolute lie that the jury has to evaluate." (Doc. 23 at 14).  Eldrup-Smith asserts that she occasionally needed to arrive thirty (30) minutes late due to panic attacks and paralyzing headaches and that she provided Sears with notice of this requested accommodation.  (Doc. 22 ¶ 18 (citing complaint (Doc. 1 ¶ 32)).  Even if the court were to assume the truth of these allegations, which it cannot at the summary judgment stage, Eldrup-Smith's claim fails for two crucial reasons.

Eldrup-Smith's disability claim ostensibly incorporates two adverse employment actions: first, a failure by Sears to accommodate her disability, and second, her termination.  Regarding the first, Eldrup-Smith concedes that she was never denied requested time off.  (See Doc. 18 ¶ 20).  An ADA failure to accommodate claim requires the plaintiff to show that she requested a necessary accommodation and that the employer denied that request unreasonably.  Skerski v. Time Warner Cable Co., 257 F.3d 273, 284 (3d Cir. 2001).  Although Eldrup-Smith has produced a doctor's note dated May 7, 2013 establishing her PTSD diagnosis, (Doc. 22-6), she has not offered evidence beyond the allegations in her pleadings which tend to show that she gave such a note to her employer or that she requested an accommodation deriving from that diagnosis.  (Doc. 18 ¶¶ 18-19; Doc. 22 ¶ 18 (plaintiff citing only complaint (Doc. 1 ¶ 32) in support of allegation that she noticed

18

Dare of her need for an occasional late clock-in time)).  Moreover, the record is devoid of evidence that Sears denied any of Eldrup-Smith's requests for time off for medical purposes; indeed, she acknowledges that Sears did not deny her leave as requested.  (Doc. 18 ¶ 20).  In sum, she offers no evidence from which a juror could reasonably infer that Sears denied Eldrup-Smith a reasonable accommodation necessitated by her disability.

Second, Eldrup-Smith asserts that her July 13, 2009, termination for time theft was orchestrated as pretext to disguise management's discriminatory animus toward the disabled.  To prevail on this claim, Eldrup-Smith must demonstrate that she suffered adverse employment action as a result of her disability.  Assuming that Eldrup-Smith has established a *prima facie* case, the burden of production shifts to Sears to articulate a legitimate, nondiscriminatory reason for her termination.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999) (observing that unless a plaintiff points "to some evidence, direct or circumstantial, from which a factfinder" could infer that stated reasons are pretextual, summary judgment for the employer is appropriate on ADA claim).  Sears again points to Eldrup-Smith's falsification of her time card as a legitimate reason for terminating her employment.  (Doc. 18 ¶¶ 43-46; Eldrup-Smith Dep. 103:16-20 (testifying that she manually entered 9:15 p.m. as her clock-out time despite leaving at 3:00 or 4:00 p.m.)).  As the court concluded *supra*, this satisfies Sears' burden of production at the second McDonnell Douglas step.

The burden thus shifts back to Eldrup-Smith to "cast sufficient doubt" on Sears' proffered reason for her termination.  Fuentes, 32 F.3d at 762.  The Third Circuit has explained that this step requires ADA plaintiffs, like age discrimination plaintiffs, to come forward with evidence which allow a reasonable inference that the employer's rationale "was a fabrication" or that discrimination "was more likely than not a motivating or determinative cause of the adverse employment action." Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007).  Plaintiffs can prove pretext and survive summary judgment by producing evidence that weakens or discredits the employer's proffered reason for the adverse employment decision.  Fuentes, 32 F.3d at 765 (tasking plaintiffs to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in employer's reasoning) (citing Ezold, 983 F.2d at 531).

Eldrup-Smith has not carried this burden.  Her ADA claim fails for the same reasons as her ADEA claim: she has not meaningfully discredited Sears' legitimate, nondiscriminatory reason for terminating her employment.  See supra at 13-16.  As in the case of her ADEA claim, Eldrup-Smith supports her statement of undisputed "facts" for her ADA claim by citing only to her complaint.  (E.g. Doc. 22 ¶ 20 (citing complaint (Doc. 1 ¶ 33(e)) for proposition that "Dare . . . stated to her that her accommodation interfered with the management of the store[,] could not continue . . . [and] is prima facie evidence of discrimination")).  The Rule 56 standard demands more of the plaintiff.  Pobodnik, 409 F.3d at 594 (emphasizing that "to survive summary judgment, a party must present more than just 'bare assertions,

conclusory allegations or suspicions' to show the existence of a genuine issue"). Eldrup-Smith's unsupported reassertion —and amplification—of the allegations in her complaint is insufficient to satisfy this standard. See Kirleis, 560 F.3d at 16. For these reasons, Sears is entitled to summary judgment with respect to Eldrup-Smith's ADA discrimination claim.

### 3.   *PHRA Claims*

Eldrup-Smith asserts state law claims under the PHRA for age and disability discrimination in Counts II and IV of her complaint.  (Doc. 1).  Pennsylvania courts assess PHRA claims in accordance with their federal counterparts.  See Baker v. United Def. Indus., 403 Fed. Appx. 751, 754 (3d Cir. 2010) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)); see also Burgess-Walls v. Brown, 202 U.S. Dist. LEXIS 94087, *7 (E.D. Pa. Aug. 22, 2011 (citing Goosby v. Johnson & Johnson Med. Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000)); Kelly, 94 F.3d at 105).  This is true of both Eldrup-Smith's ADA claim and her ADEA claim.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (observing that ADA and PHRA are "basically the same"); Glanzman v. Metro Mgmt. Corp., 391 F.3d 506, 509 (3d Cir. 2004) (noting that "the same legal standards and analysis are applicable to claims under both the ADEA and the PHRA").  Eldrup-Smith implicitly acknowledges this point in her brief.  (See Doc. 23 at 14-20 (referring interchangeably to PHRA and federal law claims )).  Because the court has determined that Sears is entitled to summary judgment as to Eldrup-Smith's federal discrimination claims, the court will also enter judgment in Sears' favor with respect to Eldrup-Smith's PHRA claims.

### 4.    *Federal & State Labor Laws*

Eldrup-Smight also asserts a claim for violation of the Fair Labor Standards Act ("FLSA") and corresponding state minimum wage and hour laws.  The FLSA establishes federal minimum wage, maximum hour, and overtime guarantees that cannot be contractually modified.  See 29 U.S.C. §§ 201 *et seq.*  The FLSA requires that employers compensate their non-exempt[9] employees working longer than forty (40) hours per week for time worked in excess of forty (40) hours at a rate not less than one and one-half times his or her regular hourly wage.  Id. § 207(a)(1).  In order to prevail on this claim, Eldrup-Smith need only demonstrate that genuine issues of material fact exist with respect to whether she worked in excess of forty (40) hours per week and whether she was compensated for that time.  See id.

Again, Eldrup-Smith fails to meet her burden.  Eldrup-Smith acknowledges that, as HR lead, she was responsible for ensuring accurate timekeeping and for training all employees on timekeeping policies.  (Doc. 18 ¶¶ 11-25).  She understood that Sears' HR policies prohibit employees from working off the clock and further prohibited management from requiring employees to do so.  (Id. ¶¶ 28, 31).  And she concedes that she never told her supervisors that she was working off the clock or that she was working without reporting hours worked and receiving compensation. (Id. ¶¶ 32-33).  Nonetheless, Eldrup-Smith asserts that objective evidence supports her claim that she often received work-related phone calls while off-duty: she

---

[9] The FLSA exempts certain employees from the overtime requirement. See 29 U.S.C. § 213(a)(1).  Eldrup-Smith is not an exempt employee.  (Doc. 18 ¶ 22).

contends that management "placed 276 calls to plaintiff's home over the last two years of her employment" and that cell phone records support that position.  (Doc. 22 ¶¶ 21, 32).  Despite extensive reliance on purportedly existent cell phone records, Eldrup-Smith cites only to her complaint to support her contention that she frequently handled work-related phone calls while off the clock.  (<u>E.g.</u> Doc. 22 ¶ 32 (citing complaint (Doc. 1) for proposition that she participated in conference calls from   her home without compensation)).

The court emphasizes that, at summary judgment, plaintiffs must offer more than speculation and allegation in support of their claims.  It is incumbent upon the non-moving party to present *some evidence* creating a genuine dispute of material fact to be resolved by a jury.  <u>See</u> Fed. R. Civ. P. 56(c).  When a plaintiff appears before the court with nothing more than "bare assertions [and] conclusory allegations," the district court must grant summary judgment in favor of the moving party.  <u>Pobodnik</u>, 409 F.3d at 594; <u>Kirleis</u>, 560 F.3d at 16.  The court cannot simply assume the truth of Eldrup-Smith's various allegations at the Rule 56 stage of the case.  Given the dearth of record evidence supporting her FLSA and state law overtime compensation claims, the court cannot but grant summary judgment in favor of Sears and against Eldrup-Smith.

**V.**     <u>**Conclusion**</u>

For all of the foregoing reasons, defendants' motion (Doc. 17) for summary

judgment will be granted in its entirety.  An appropriate order will issue.


                                        /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania

Dated:      April 4, 2014